**STATE SURETY COMPANY, Appellant,**

v.

**Jerome H. LENSING et al., Appellees.**

**No. 2–58053.**

Supreme Court of Iowa.

Jan. 19, 1977.

Miller, Pearson, Gloe & Burns, Decorah, for appellant.

Strand, Anderson & Raduenz, Decorah, for appellee Jerome Lensing.

Warren L. De Vries, Mason City, for appellees Richard Knauer, d/b/a Midway Car Sales Co., Central States Auto Auction, Inc., and Joel J. Bittner, d/b/a Joe's Auto Sales.

Meyer & Zahasky, Decorah, for appellees James Bohr, John Fossenkemper and Zimmerman Buick, Inc.

Heard by MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

MOORE, Chief Justice.

Plaintiff Surety Company appeals from judgment holding it liable to Arizona purchasers on the bond required by Code section 322.4, for Iowa Motor Vehicle Dealers. We reverse and remand.

There are no disputed fact issues. The parties stipulated that defendant Jerome Lensing was duly licensed under chapter 322, 1971 Code, as a retail motor vehicle dealer in Festina, Iowa. Pursuant to section 322.4(7), plaintiff corporate Surety Company had issued a $10,000 surety bond conditioned upon Lensing's faithful compliance with the statutes set out in Code chapters 321 and 322.

In early 1972 Lensing traveled to Tucson, Arizona and there made two used car sales. On February 28 he sold a 1971 Buick LeSabre to one John Fossenkemper, an Arizona resident. On March 29 he sold a 1971 Buick Riviera to Zimmerman Buick, an Arizona corporation engaged in the sale of motor vehicles in Phoenix. Unknown to Lensing, both cars which he had previously purchased for resale were stolen and thus the Iowa Certificates of Title which were transferred in connection with the transactions were invalid. Thereafter, the insurance company which had paid the rightful owner of the car purchased by Zimmerman Buick, Inc., made claim on that Arizona car dealer, which subsequently paid the insurance carrier in order to obtain a valid Arizona Certificate of Title to the car and thus it retained possession. The Arizona police later confiscated the stolen car which had been purchased by Fossenkemper. It is undisputed that the entire transactions from preliminary negotiations through actual delivery and payment for the cars took place in Arizona.

Plaintiff Surety then commenced the present action in interpleader alleging defendants, other than Lensing, were claimants to a $10,000 fund held by it to cover any obligations owing under the dealer licensing bond as the result of transactions involving stolen vehicles. Other than the two Arizona purchasers, the claimants were

Iowa residents and purchasers of cars from Lensing which had been stolen.

In its petition plaintiff denied liability under the surety bond to Zimmerman and Fossenkemper on the basis that the sales were made out of Iowa to non-residents. The surety bond was posted under the provisions of section 322.4(7), Code 1971, which provided:

"Each person before engaging in this state in the business of selling at retail motor vehicles or representing or advertising that he is engaged or intends to engage in such business in this state shall file in the office of the department an application for license as a motor vehicle dealer in the state in such form as the department may prescribe, duly verified by oath, which application shall include the following:

"* * *.

"7. A financial statement of the applicant showing his true financial condition as of a date not more than six months prior to the date of such application. Before the issuance of a motor vehicle dealer's license to a dealer engaged in the sale of vehicles for which a certificate of title is required, under the provisions of chapter 321, the applicant for such license shall furnish a surety bond executed by the applicant as principal and executed by a corporate surety company, licensed and qualified to do business within this state, which bond shall run to the state of Iowa, be in the amount of ten thousand dollars and be conditioned upon the faithful compliance by said applicant as a dealer, if the license be issued to it or him, that such dealer will comply with all of the statutes of this state regulating or being applicable to the business of said dealer as a dealer in motor vehicles, and indemnifying any person dealing or transacting business with said dealer in connection with any motor vehicle from any loss or damage occasioned by the failure of such dealer to comply with any of the provisions of chapter 321 and this chapter, including, but not limited to, the furnishing of a proper and valid certifi-

cate of title to the motor vehicle involved in any such transaction, and that such bond shall be filed with the department prior to the issuance of license provided by law. The aggregate liability of the surety of all persons, however, shall in no event exceed the amount of said bond. "* * * *."

Section 322.3 enumerates several requirements and prohibited acts of persons "engaged in this state" in the business of selling new or used motor vehicles. Included is a prohibition against Sunday sales.

The trial court expressly found the legislature did not intend to exclude casual out-of-state sales from the protection of the statutory motor vehicle dealers surety bond. The court's conclusions include:

"It is the opinion of the Court that the statute, while talking of engaging in this state in the business of selling of motor vehicles, contemplates the status of his business as a dealer being in the State of Iowa and does not contemplate where each individual or casual transaction may take place. * * *.

"The Court is of the opinion that had the legislature intended to exclude a casual out-of-state sale from the business acts of an established dealer, that it would have specifically so stated in Section 322.3, pertaining to prohibited acts."

The court awarded each defendant (except Lensing) a share of the fund proportionate to his loss. Plaintiff Surety Company appeals the award as to Zimmerman Buick, Inc., and Fossenkemper.

The sole issue in this appeal is one of statutory construction, namely: Does the surety bond given pursuant to the provisions of section 322.4(7), protect an aggrieved non-resident purchaser who suffers damages as a result of the casual out-of-state sale by an Iowa licensed car dealer?

■ I. We are not bound by the trial court's determination of the applicable law. We are not precluded from inquiry into whether the trial court applied erroneous rules of law which materially affected its decision. *In re Estate of Northup*, Iowa,

230 N.W.2d 918, 921; *Farmers Insurance Group v. Merryweather,* Iowa, 214 N.W.2d 184, 186, 187.

■■■ II. Several general principles are applicable to guide us in interpreting the scope of this statutory bond. Where the bond is a statutory bond, the surety's liability must be measured by the statute rather than by the form of the bond. Indeed, the provisions of the statute are read into the bond and nonessential matters are treated as mere surplusage and of no effect. *Community Sav. Bk. v. Western Surety Co.,* 232 Iowa 1381, 1385, 8 N.W.2d 427, 429; *Jaeger Mfg. Co. v. Massachusetts Co.,* 229 Iowa 158, 161, 294 N.W. 268, 270; *City of Charles City v. Rasmussen,* 210 Iowa 841, 847, 232 N.W. 137, 139. In *Zapf v. Ridenour,* 198 Iowa 1006, 1009, 200 N.W. 618, 619, we state:

"We are committed to the doctrine that, where a strictly statutory bond is given, there can be no liability on such bond beyond the terms and provisions of the statute, * * *."

See also 53 C.J.S. Licenses § 36b; 12 Am.Jur.2d Bonds, section 26.

■■■ A surety's liability may not be enlarged by implication. *Andrew v. Austin,* 213 Iowa 963, 967, 232 N.W. 79, 81; *Conley v. Jamison,* 205 Iowa 1326, 1328, 219 N.W. 485, 486. However, statutory bonds should be construed in light of the purpose as expressed by the statute. 11 C.J.S. Bonds § 39, page 418.

With these principles in mind we come to the real and decisive question of whether the provisions of section 322.4(7) apply beyond the limits of this state. It is a question of first impression with this court.

The general rule is thus stated in 73 Am.Jur.2d, Statutes, section 359, page 492:

"Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication. Accordingly, a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it. These rules apply to a statute using general words, such as 'any' or 'all,' in describing the persons or acts to which the statute applies. They are also applicable where the statute would be declared invalid if given an interpretation resulting in its extraterritorial operation."

After diligent search we have found only one other court which has ruled on the exact question herein presented. In *Peerless Insurance Company v. Clark,* 29 Colo. App. 436, 487 P.2d 574, the Colorado Court of Appeals held the motor vehicle dealer's bond did not extend to protect an Indiana purchaser in a purely Indiana sales transaction. The basis for this opinion was the aforementioned well-settled rule that statutes are not presumed to have any extraterritorial effect and the mere use of the words "any fraud" and "any person" are insufficient to overcome the presumption. The court explained its reasoning as follows:

"We have found no Colorado case directly in point. However the law appears to be well settled that a statute cannot be presumed to have any extraterritorial effect. In *Swift & Co. v. Peterson,* 192 Or. 97, 233 P.2d 216, it is stated,

" 'No legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it. In fact, a contrary presumption prevails and statutes are generally so construed. 50 Am. Jur., Statutes, 510 § 487; *Sandberg v. McDonald,* 248 U.S. 185, 39 S.Ct. 84, 195, 63 L.Ed. 200; * * *.'

"*Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co.,* 87 Idaho 185, 392 P.2d 191, is almost directly in point. In that case a produce dealer licensed and bonded

in the State of Idaho made two purchases of potatoes in Oregon for which he failed to pay. It was undisputed that both transactions took place entirely within the State of Oregon. Had they occurred in Idaho the surety on the dealer's bond would have been liable. The claimant argued that the words, any person, any dealer or broker, every dealer, etc. used in the Idaho Statute gave it extraterritorial effect. The Idaho court held the surety not liable, stating,

" 'An examination of this Act * * * does not disclose any express phraseology designed to extend to transactions consummated "fully, wholly and entirely," * * * in a state foreign to Idaho.

" 'Appellant cannot be permitted the extraterritorial interpretation of [the Act] which it seeks. The bond furnished by a produce dealer under the Act must be measured by the law of Idaho under which it was written, '* * *. Statutes are intended to apply and be confined in their operation to persons, property and rights which are within the territorial jurisdiction of the law-making power. The Act does not expressly provide for extraterritorial application. In the absence of any extraterritorial phraseology contained in such Act, it cannot be construed to have an extraterritorial effect, on the theory that the legislature so intended.'

"We agree with the foregoing and hold that Peerless is not liable on the bond issued under the state statute for the fraud which occurred outside the State of Colorado." 29 Colo.App. 436, 487 P.2d 574–575.

In addition to the well-reasoned opinion in *Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co.* cited in *Peerless Insurance Company v. Clark,* supra, see also *Black Hills Packing Co. v. S. D. Stockgrowers Ass'n,* D.S.D., 397 F.Supp. 622, 626, 627; *Securities & Exch. Com'n v. North American Research & D. Corp.,* S.D.N.Y., 280 F.Supp. 106, 123; *Sandberg v. McDonald,* 248 U.S. 185, 196, 39 S.Ct. 84, 86, 63 L.Ed. 200, 204; *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 357, 29 S.Ct. 511, 513, 53 L.Ed. 826, 832 (All legislation is prima facie territorial).

 We cannot ignore the general rule that a state's statutes are presumed not to have extraterritorial effect. Nothing within the statutory scheme encompassed by chapter 322 convinces us the regulation of out-of-state transactions to non-residents was ever contemplated. The expanded interpretation urged by appellees and adopted by the trial court is unwarranted after careful reading of the statute.

We agree with the following paragraph in appellant's amendment to its brief:

"It is respectfully requested that the trial court's ruling allowing the claim of appellees, John Fossenkemper and Zimmerman Buick, Inc., to share in the proceeds of the $10,000 surety bond and the judgment consistent therewith be reversed and this cause remanded to the trial court for entry of judgment consistent with such decision by deleting such claims and adjusting the claims of the other appellees accordingly."

REVERSED AND REMANDED.