[Civ. No. 68722. Second Dist., Div. Seven. Feb. 23, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLIED FIDELITY INSURANCE COMPANY,
Defendant and Appellant.

284

**COUNSEL**

Benjamin P. Wasserman for Defendant and Appellant.

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—The issue presented by this appeal is whether the trial court properly denied the motion of Allied Fidelity Insurance Company (Allied) to vacate forfeiture of bail and exonerate the bond posted by it to secure the release from custody of Carlos Chacon (Chacon), in criminal proceedings then pending against him. For reasons to follow, we have concluded that the trial court's decision denying Allied's motion should be affirmed.

*Facts*

Allied posted a bail bond in the amount of $25,000 on November 19, 1981, for Chacon, who was charged with a violation of Penal Code section

487, subdivision 2, grand theft person. On December 7, 1981, Chacon failed to appear for trial in superior court and Allied's bond was ordered forfeited. A notice of order forfeiting bail was mailed to Allied on December 14, 1981.

Thereafter, on May 25, 1982, Allied filed a motion to vacate forfeiture and exonerate bond, which was set for hearing on June 16, 1982. The motion was made on the ground that Allied was entitled to rescind its obligation under the posted bond on the basis of fraud and failure of consideration.

To support its motion, Allied alleged that on November 12, 1981, a man, who identified himself as Charles Edward Davis, approached V. C. Van Pool, a bondsman for Allied, in his office to obtain bail for Chacon. The alleged Mr. Davis provided Van Pool with several items of identification, namely, a California driver's license, a social security card and credit cards, all in the name of Charles Edward Davis. The alleged Mr. Davis informed Van Pool that "he was a widower and owned a piece of property wherein the equity was more than $35,000.00." The alleged Mr. Davis filled out an application and a trust deed, covering his property. Van Pool told him that he could do nothing until a property check was completed the following day and then he would call him. The alleged Mr. Davis departed.

The next day Van Pool "called Title Insurance Company and ran [a check] on the property; the property came back as represented." He then called the alleged Mr. Davis who came to his office. The alleged Mr. Davis paid the 10 percent premium and was given the bail bond by Van Pool to deliver to the county jail. Van Pool told him that Chacon had to be in his office within 24 hours to sign the application and other papers.

When Chacon failed to appear in Van Pool's office, he had one of his employees call the phone number provided by the alleged Mr. Davis. When no one answered, Van Pool checked the Haines Directory for the address of the property secured by the trust deed and found a telephone number listed. Using this telephone number, Van Pool contacted the real Mr. Davis who informed him that he "had not signed the application or Trust Deed."

On June 16, 1982, the trial court denied Allied's motion to vacate the forfeiture and exonerate the bond, from which Allied appeals.[1]

Allied contends on appeal that the trial court erred in denying its motion to vacate the forfeiture and exonerate the bond on the ground of fraud and failure of consideration.

---

[1]An order refusing to set aside a forfeiture of bail is appealable. (*Newman* v. *Superior Court* (1967) 67 Cal.2d 620, 622 [63 Cal.Rptr. 284, 432 P.2d 972].)

*Discussion*

■ The term "bail" means the security—whether cash or bond—given for the due appearance of a prisoner in order to obtain his release from imprisonment. (*Sawyer* v. *Barbour* (1956) 142 Cal.App.2d 827, 833 [300 P.2d 187].) ■ The purpose of bail in criminal cases is to insure the personal appearance of the defendant in court when his attendance may be lawfully required. (*McDermott* v. *Superior Court* (1972) 6 Cal.3d 693, 695 [100 Cal.Rptr. 297, 493 P.2d 1161].)

Penal Code section 1305[2] prescribes the procedure for setting aside a forfeiture. "The statute explicitly provides for notice of the forfeiture and gives the surety 180 days to show cause for vacating the forfeiture. The types of excusable absences are specified." (*People* v. *Beverly Bail Bonds* (1982) 134 Cal.App.3d 906, 910 [185 Cal.Rptr. 36].)

In the present case, Allied does not deny that it received notice of the forfeiture. Nor does it contend that Chacon failed to appear for his trial because of "illness, insanity, or detention by civil or military authorities . . . ." (Pen. Code, § 1305.) ■ Rather, Allied argues that it was induced by fraud to write a bond, and that such fraud makes the bond voidable.

Allied's argument fails to distinguish between its contractual relationship with the phony Mr. Davis and Chacon, and its contractual relationship with the state.

Here, the bond posted by Allied provided inter alia that Chacon, "having been admitted to bail in the sum of . . . $25,000 and ordered to appear in the above-entitled [superior] court on December 7, 1981, . . ." Allied "hereby undertakes that the above-named [Chacon] will appear in the above-

---

[2]Penal Code section 1305 provides in pertinent part: "If within 180 days after such entry in the minutes [that the defendant failed to appear] or mailing [of notice of forfeiture] as the case may be, it is made to appear to the satisfaction of the court that the defendant is dead or is otherwise permanently unable to appear in court due to illness, insanity, or detention by civil or military authorities, and that the absence of the defendant was not with the connivance of the bail, the court shall direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just. If within 180 days after such entry in the minutes or mailing as the case may be, it is made to appear to the satisfaction of the court that the defendant is temporarily disabled by reason of illness, insanity, or detention by civil or military authorities and is therefore unable to appear in court at any time during the remainder of such 180 days, and that the absence of the defendant has not been with the connivance of the bail, then the period of time during which the disability continues shall not be deemed part of such 180 days. Upon a finding by the court that a reasonable period of time is necessary in order to return the defendant to court upon the termination of the disability, then such period of time, as fixed by the court, shall not be deemed part of such 180 days."

named [superior] court on the date above set forth . . . ." It further provided that, in the event Chacon failed to appear, "Allied . . . will pay to the people of the State of California, the sum of . . . $25,000."

The state relinquished the custody of Chacon to the bondsman in return for the assurance that a certain sum will be paid by the surety in the event of the nonappearance of Chacon. (See *Continental Cas. Co.* v. *State of California* (1974) 41 Cal.App.3d 259, 262 [115 Cal.Rptr. 868].) Thus, it is the conduct of Chacon, rather than the phony Mr. Davis, which triggers a forfeiture of the bond posted by Allied. (*Ibid.*)

In contrast, Allied entered a contract with the phony Mr. Davis. This contract encompasses the risk that Chacon will not appear. To guard against this risk, Allied required the phony Mr. Davis to execute a deed of trust, covering certain real property, in favor of Allied. This protection was not for the state. Rather, the sole protection afforded the state against the nonappearance of Chacon was the posted bond.

■ Moreover, as our Supreme Court in *Simon Newman Co.* v. *Tully* (1939) 13 Cal.2d 134, 137-138 [88 P.2d 131], stated: "The rule is well settled and generally followed that fraud of the principal debtor will not relieve the guarantor or surety who acted at the request of the debtor from liability, if the creditor did not have notice of the fraud and did not participate therein." For example, in *Glickman* v. *Collins* (1975) 13 Cal.3d 852 [120 Cal.Rptr. 76, 533 P.2d 204, 93 A.L.R.3d 513], the court was called upon to determine the validity of a guaranty. There, plaintiff sued on a guaranty made by defendant, guaranteeing the child and spousal support obligations of plaintiff's husband whom defendant intended to marry after his divorce. Defendant contended that plaintiff's husband fraudulently induced her to sign the guaranty by misrepresenting its legal effect. The court held that, even if plaintiff's husband had deceived defendant, "his actions would not operate to discharge her obligations to plaintiff, an innocent party, who had no notice of his actions and did not participate therein." (*Id.*, at p. 862.) ■ Here, the record is clear that the state neither participated in nor had notice of the fraud perpetrated by the phony Mr. Davis on Allied.

Furthermore, "the obligation assumed by the bail [Allied] is absolute but for the defenses set forth in section 1305 of the Penal Code . . . ." (*People* v. *Stuyvesant Ins. Co.* (1963) 216 Cal.App.2d 380, 382 [31 Cal.Rptr. 208].) "Clearly, if the government took some affirmative action which rendered the surety's obligation to have the defendant [Chacon] in court as ordered an impossibility . . . performance would be excused and the bond exonerated." (*People* v. *National Auto. & Cas. Ins. Co.* (1979) 92 Cal.App.3d

481, 483 [154 Cal.Rptr. 872].) However, the evidence is otherwise. There is nothing in the record to show that the state prevented Allied from performing its obligation to produce Chacon for trial.

Accordingly, the order is affirmed.

Schauer, P. J., and Johnson, J., concurred.