[No. A073562. First Dist., Div. Four. July 22, 1997.]

WERNER S. LEWIN, JR., Plaintiff and Respondent, v.
PHILLIP ERNEST ANSELMO, Defendant and Appellant.

[No. A075014. First Dist., Div. Four. July 22, 1997.]

WERNER S. LEWIN, JR., Plaintiff and Appellant, v.
BRUCE THOMPSON et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Part 1 of this opinion is not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

Fish & Snell and Michael J. Fish for Plaintiff and Appellant and for Plaintiff and Respondent.

Phillip Ernest Anselmo, in pro. per., for Defendant and Appellant.

Kenneth W. Jenner for Defendants and Respondents.

**OPINION**

**REARDON, J.**—In No. A073562, defendant Phillip Ernest Anselmo appeals from an order awarding postjudgment costs, including attorney fees, to plaintiff Werner S. Lewin, Jr. In No. A075014, plaintiff Lewin appeals from that part of a postjudgment order denying him judgment on an appeal bond against personal sureties Dr. Bruce Thompson and Anita Thompson. The two appeals have been consolidated.

1. *Lewin* v. *Anselmo (No. A073562)**

. . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Lewin* v. *Thompson (A075014)*

The basic facts in this appeal are not in dispute. In November 1993, the trial court entered its default judgment in favor of Lewin and against Anselmo. Anselmo appealed from that default judgment. (No. A064283.)

On January 24, 1994, Dr. Bruce Thompson and Anita Thompson (the Thompsons)[7] executed an appeal bond or undertaking (the bond) in which they agreed to act as personal sureties for Anselmo while Anselmo's case was on appeal.[8] At the bottom of the two-page document, underneath their oath and signatures, the Thompsons added the following handwritten notation, signed by them: "We understand we have 15 days from date of executing this note to fully cancel + rescind, or hear objections." The bond was filed in the trial court on January 25, 1994. Anselmo did not serve Lewin with a copy of the original document. Instead, Anselmo served him with an unexecuted, nonconforming copy of the bond, without the additional handwritten notations. When Lewin received the unexecuted copy, he called the clerk's office to confirm that a bond executed by the Thompsons had been filed with the court. He was told that it had.

A few days later, on January 28, 1994, the Thompsons filed a document with the clerk of this court purporting to withdraw their undertaking. The Thompsons served a copy of this document on Lewin.

After we affirmed the judgment against Anselmo (*Lewin* v. *Anselmo* (July 21, 1995) A064283 [nonpub. opn.]) and issued our remittitur, Lewin filed a motion to enforce liability on the Thompsons' bond and two other bonds. The Thompsons opposed Lewin's motion[9] and Lewin replied. Following a hearing, the trial court granted Lewin's motion to enforce liability on the other two bonds, but denied the motion as to the Thompsons' bond. In doing so, the trial court stated: "The Thompson[s] provided a surety which was

---

*See footnote, *ante*, page 694.

[7]The Thompsons were then clients of Anselmo on an unrelated matter.

[8]The bond included the contents required by Code of Civil Procedure section 995.320, including the following: "Whereas the above Dr. Bruce and Anita Thompson desires [to] give an undertaking and act as personal sureties for Phillip Anselmo for a money judgement while the matter is on appeal pursuant [to] CCP 995 et. seq., now, therefore, the undersigned sureties obligate ourselves, jointly and severally under the statutory obligations in the amount of $60,000.00."

[9]Anselmo also filed an opposition on the ground that Lewin's motion was "premature." The trial court did not adopt his theory.

capable of recission 15 days from the date of execution and was rescinded timely. [Plaintiff] never received an executed copy of the surety from the Thompson[s]. [¶] . . . [¶] Judgment is *not* to be entered against Dr. and Anita Thompson." (Italics in original.) Lewin appealed.[10]

 The principal issue in this appeal is whether language inserted in an appeal bond given under Code of Civil Procedure section[11] 917.1 may give a surety a unilateral right to cancel or rescind the bond. Lewin argues that the procedures set forth in the Bond and Undertaking Law (§ 995.010 et seq.) must be strictly construed and that the trial court erred in failing to follow those statutory provisions. The Thompsons respond that notwithstanding the Bond and Undertaking Law, equitable defenses remain available to them as sureties. They argue that the defenses of estoppel and waiver are applicable in this case. The Thompsons also contend that because they were clients of Anselmo when the document was executed, they are presumed to have acted under his undue influence, rendering the entire document invalid.

In 1982, the Legislature, following the recommendations of the California Law Revision Commission, enacted a comprehensive Bond and Undertaking Law to codify in one chapter the provisions relating to bonds and undertakings, the liabilities and responsibilities of the parties to those instruments, and the methods of enforcement that had previously appeared in various statutes and case law. By its terms, the statutory scheme applies to any "bond or undertaking executed, filed, posted, furnished, or otherwise given as security pursuant to any statute of this state, except to the extent the statute prescribes a different rule or is inconsistent." (§ 995.020, subd. (a); see *Milo Equipment Corp.* v. *Elsinore Valley Mun. Water Dist.* (1988) 205 Cal.App.3d 1282, 1285-1286 [253 Cal.Rptr. 126].) The Bond and Undertaking Law applies to bonds filed ancillary to court proceedings, including those necessary "to stay enforcement of a judgment on appeal." (See 16 Cal. Law Revision Com. Rep. (1982) p. 507, fn. omitted.)

The terms of a statutory bond are controlled by statute. (See §§ 995.320, 995.330.) "If a bond does not contain the substantial matter or conditions required by this chapter or by the statute providing for the bond, or if there are any defects in the giving or filing of the bond, *the bond is not void so as to release the principal and sureties from liability.*" (§ 995.380, subd. (a), italics added.) In its comments to section 995.380, the Law Revision Commission explained that the section "is drawn from former Government Code

---

[10]An order denying judgment against a surety on an appeal bond is an appealable order. (*Merritt* v. *J. A. Stafford Co.* (1968) 68 Cal.2d 619, 622 [68 Cal.Rptr. 447, 440 P.2d 927].)

[11]Unless otherwise stated, all section references are to the Code of Civil Procedure.

Section 1554 (official bond). The provision of former law relating to 'equitable' liability is not continued; *the sureties on the bond or undertaking are liable to the extent provided by statute.* See Section 995.320 (contents of bond or undertaking); Powers Regulator Co. v. Seaboard Surety Co., [(1962)] 204 Cal.App.2d 338 [22 Cal.Rptr. 373]." (Cal. Law Revision Com. com., 18 West's Ann. Code Civ. Proc., § 995.380 (1997 pocket supp.) p. 75, italics added.)

In the case cited by the Law Revision Commission, the court held that nonessential language in a statutory bond is surplusage and without effect. In that case, an unpaid sub-subcontractor brought an action against a surety on a public works bond, given by the surety and the general contractor, to collect a sum alleged to be due. The surety argued on appeal that Powers had waived its rights under the bond by giving a release to the general contractor. The surety relied, in part, on express language in the bond which purported to bind the general contractor as well as the surety. As the applicable statute provided that only the sureties were liable, the reviewing court rejected the surety's argument. It stated: "The [bond] at bar is strictly a statutory bond and must be construed as such; any surplusage over and above the requirements of the statute must be disregarded." (*Powers Regulator Co.* v. *Seaboard Surety Co.* (1962) 204 Cal.App.2d 338, 348 [22 Cal.Rptr. 373].) Conditions in the bond which exceed the statutory requirements may be regarded as surplusage and the bond sustained as to the others. (*Ibid.*)

The *Powers Regulator Co.* case is in accord with the law in other jurisdictions. (See 12 Am.Jur.2d, Bonds, § 7, p. 483.) Typical is the following statement of the Iowa Supreme Court: "Several general principles are applicable to guide us in interpreting the scope of this statutory bond. Where the bond is a statutory bond, the surety's liability must be measured by the statute rather than by the form of the bond. Indeed, the provisions of the statute are read into the bond and nonessential matters are treated as mere surplusage and of no effect. [Citations.]" (*State Surety Co.* v. *Lensing* (Iowa 1977) 249 N.W.2d 608, 611.)

We therefore look to the Bond and Undertaking Law to determine when a statutory bond becomes effective and, once in effect, how it may be withdrawn. First, section 995.420, subdivision (a) provides: "Unless the statute providing for a bond provides that the bond becomes effective at a different time, *a bond is effective at the time it is given* or, if the statute requires that the bond be approved, at the time it is approved." (Italics added.) Section 995.410, subdivision (a) provides: *"A bond becomes effective without approval* unless the statute providing for the bond requires that the bond be approved by the court or officer." (Italics added.) Since section 917.1, the specific statute providing for an appeal bond, is silent as to an effective date

and does not require an appeal bond to be approved, it follows that an appeal bond becomes effective "at the time it is given . . . ." (§§ 995.410, subd. (a), 995.420, subd. (a).) Once a bond is given in an action or proceeding, it must be filed with the court. (§ 995.340, subd. (a).)

The Thompsons argue, alternatively, that the handwritten language added to the bottom of the appeal bond was either a "condition precedent," preventing the bond from taking effect until 15 days had passed or a "condition subsequent," permitting them to unilaterally withdraw from their obligation within that time period. These contentions, if accepted, would undercut the statutory scheme.

Since section 995.420 provides that "a bond is effective at the time it is given," the inclusion of a provision that could be interpreted as preventing the bond from becoming effective until 15 days after it had been executed must be disregarded as surplusage. (*Powers Regulator Co.* v. *Seaboard Surety Co., supra,* 204 Cal.App.2d at p. 348.) The appeal bond in this case was effective no later than January 25, 1994, by which time it had been given and filed with the trial court.

If, on the other hand, the Thompsons' handwritten notation were construed to be a condition subsequent permitting them 15 days after it had become effective within which to unilaterally withdraw from the bond, it would conflict with section 996.110. That section provides that a surety on a bond given in an action or proceeding may be released from liability on that bond only by order of the court, following a properly noticed hearing. (§ 996.110.) At that hearing, the court must determine "whether injury to the beneficiary would result from substitution or release of the surety." (§ 996.120.) In this case, it is undisputed that the Thompsons did not notice or request the scheduling of any hearing. As the beneficiary, Lewin was entitled to be heard and to have the court determine whether he would be injured if the Thompsons were released from liability on the bond. (*Ibid.*)

■ These statutory procedures are more than mere formalities. Section 917.1, the statute providing for an appeal bond, is designed to protect the judgment won in the trial court from becoming an uncollectible while the judgment is subjected to appellate review. It provides the successful litigant with "an assured source of funds to meet the amount of the money judgment, costs and postjudgment interest after postponing enjoyment of a trial court victory." (*Grant* v. *Superior Court* (1990) 225 Cal.App.3d 929, 934 [275 Cal.Rptr. 564].) The procedural requirements applicable to all bonds set forth in the Bond and Undertaking Law serve to protect the rights of the beneficiary and to protect the integrity of the bonding procedures.

■ As they did not comply with these procedures, we conclude that the Thompsons were not released from liability on their bond when they filed their document of January 28, 1994, purporting to withdraw their undertaking as personal sureties for Anselmo.

The Thompsons also argue that because they were clients of Attorney Anselmo at the time they executed the bond, there is a presumption that they executed the documents under undue influence. Dr. Thompson declared: "I really didn't understand the legal nuances of what was going on but Mr. Anselmo assured both myself and my wife that the appeal would be successful and that under no circumstances would we be required to perform as his personal sureties." They argue that the entire transaction is presumptively invalid.

■ The relation between an attorney and client is a fiduciary relation of the highest character. (*Cox* v. *Delmas* (1893) 99 Cal. 104, 123 [33 P. 836].) A transaction between an attorney and client which occurs during the relationship and which is advantageous to the attorney is presumed to violate that fiduciary duty and to have been entered into without sufficient consideration and under undue influence. (Prob. Code, § 16004, subd. (c); *Ramirez* v. *Sturdevant* (1994) 21 Cal.App.4th 904, 917 [26 Cal.Rptr.2d 554]; see 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 119, pp. 157-158.)

■ ■ While this circumstance may raise significant issues between Anselmo and the Thompsons, it raises no defense in behalf of the Thompsons as against Lewin: "The rule is well settled and generally followed that fraud of the principal debtor will not relieve the guarantor or surety who acted at the request of the debtor from liability, if the creditor did not have notice of the fraud and did not participate therein. [Citations.]" (*Simon Newman Co.* v. *Tully* (1939) 13 Cal.2d 134, 137-138 [88 P.2d 131]; *People* v. *Allied Fidelity Ins. Co.* (1984) 152 Cal.App.3d 283, 287 [199 Cal.Rptr. 430].)

■ Lewin, the judgment creditor, was not put on notice of any fraud or undue influence. At the time a bond was given, it was the duty of the principal, Anselmo, to serve a copy on the beneficiary, Lewin. (§ 995.370.) An attorney should not deceive opposing counsel. (*Monroe* v. *State Bar* (1961) 55 Cal.2d 145, 152 [10 Cal.Rptr. 257, 358 P.2d 529].) Lewin told the trial court that when he received the nonconforming unsigned copy of the bond from Anselmo, he called the county clerk's office, and asked if they had a record of a signed bond having been filed. They said that they did. The trial court indicated that Lewin had fulfilled whatever obligation he had when he made that inquiry. Since Lewin did not have notice of any undue influence by Anselmo over the Thompsons, nor did he participate therein,

the undue influence, if any, of Anselmo over the Thompsons does not absolve the Thompsons from liability toward Lewin.

Based on our review of the hearing of April 19, 1996, we are convinced the trial court carefully considered all of the information before it. We share its empathy for the predicament in which the Thompsons were placed by the actions of their former attorney, Anselmo.[12] At the same time, the strict procedures set forth in the Bond and Undertaking Law are designed to protect the rights of the intended beneficiaries of that law and to protect the integrity of bond procedures. If a losing trial court litigant or attorney is permitted to file an appeal and then to manipulate the appeals bond procedure as has Anselmo in this case, successful litigants could not remain assured that funds will remain available for them to enjoy the fruits of their trial court victory once the appeal is over. The strict provisions of the Bond and Undertaking Law require us to reverse that portion of the trial court's order denying Lewin's motion to enforce liability on bonds against the Thompsons.

## Disposition

In No. A073562, the order awarding postjudgment costs, including attorney fees, is affirmed. Respondent Lewin is awarded costs, including attorney fees, in an amount to be determined by the trial court.

In No. A075014, that portion of the order denying Lewin's motion to enforce liability on bonds against the Thompsons is reversed. Appellant Lewin is awarded costs, including attorney fees, in an amount to be determined by the trial court.

Poché, Acting P. J., and Hanlon, J., concurred.

A petition for a rehearing was denied July 18, 1997, and the opinion was modified to read as printed above.

---

[12]We also share the trial court's concern that this may be an appropriate situation for further inquiry by the State Bar. The court (Judge William Cahill) commented: ". . . I have a person standing here who's representing someone [the Thompsons] who was Mr. Anselmo's client who got themselves in a big mess here, and I don't know how to undo that one. There is an enormous problem with these people. [¶] . . . [¶] I just want to be clear. I see so many problems here that unless it gets worked out, and maybe not even then, but I think my obligation would be to send something to the State Bar. [¶] Have you contacted the State Bar at all? [¶] . . . [¶] That's how serious I think this is. This is an amazing mess to me . . . ."