(61 P.3d 117)

No. 88,370

CARLSON AUCTION SERVICES, INC., d/b/a I-70 AUTO AUCTION, *Appellant*, v. ROSALIA LOPEZ, d/b/a LOPEZ AUTO SALES, and MID-CONTINENT CASUALTY, Garnishee, *Appellees*, and CARLSON AUCTION SERVICES, INC., d/b/a I-70 AUTO AUCTION, *Appellant*, v. NATHAN T. GRIDDINE, d/b/a N&W AUTO SALES, and MID-CONTINENT CASUALTY, Garnishee, *Appellees*.

Opinion filed January 17, 2003.

*Lynn D. Lauver* and *H. Kent Hollins*, of Topeka, for appellant.

*David D. Crane* and *Tammy N. Etem*, of Kansas City, Missouri, for appellee Mid-Continent Casualty.

Before RULON, C.J., BEIER, J., and BRAZIL, S.J.

BEIER, J.: In this case of first impression, we examine whether Missouri motor vehicle dealer bonds can be used to satisfy judgments against Missouri dealers when the acts giving rise to the judgments took place in Kansas.

Defendant Nathan Griddine, d/b/a N&W Auto Sales, and defendant Rosalia Lopez, d/b/a Lopez Auto Sales, are Missouri auto dealers licensed to do business in Missouri. To secure their Missouri licenses, they obtained motor vehicle dealer bonds in the amount of $25,000 from garnishee Mid-Continent Casualty (Mid-Continent).

Carlson Auction Services, Inc., d/b/a I-70 Auto Auction, (Carlson) is a Kansas corporation that does business in Topeka. It brought two actions against the defendants in the district court in Shawnee County, alleging they had purchased vehicles in Kansas with bad checks. Carlson obtained judgments against the defendants in the amounts of $8,910.23 and $10,070.02, and there is no

dispute that the judgments were registered in the circuit court of Jackson County, Missouri.

On November 15, 1999, the Missouri Department of Revenue (MDOR) sent Mid-Continent a letter informing it that MDOR had received notice of the final judgment in the Lopez case and that Carlson had asserted the judgment arose out of conduct worthy of suspension or revocation of Lopez' license. The letter cited Mo. Rev. Stat. § 301.560.1(4) (2002), which provides that the proceeds of a dealer bond shall be paid to a judgment debtor by MDOR upon a final judgment against a dealer from a Missouri court of competent jurisdiction. The MDOR letter included copies of the petition and judgment for Mid-Continent's "review and action as appropriate."

Carlson later sought to garnish Mid-Continent, and Lopez' and Griddine's cases were consolidated. The parties filed briefs on whether the Missouri dealer bonds provided coverage for activities outside Missouri. Carlson argued this issue had already been resolved in its favor in a previous Shawnee County decision entered by a different judge. Mid-Continent relied in part on a Missouri Attorney General opinion and urged the court to follow case law from other jurisdictions that reached the opposite result.

The district judge ruled in Mid-Continent's favor, relying upon the attorney general opinion and the case law cited therein. He noted that other jurisdictions were divided on whether a state's motor vehicle surety bonds had extraterritorial effect. Iowa, Colorado, and Idaho had held that a state's licensing statute conditioning issuance of a license on the execution of a surety bond creates a presumption that the bond covers only in-state activities, unless the statute states otherwise. See *State Surety Co. v. Lensing*, 249 N.W.2d 608, 612 (Iowa 1977); *Peerless Ins. v. Clark*, 29 Colo. App. 436, 439, 487 P.2d 574 (1971); *Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co.*, 87 Idaho 185, 193, 392 P.2d 191 (1964). Virginia and Oregon, on the other hand, had held that such bonds are given extraterritorial effect absent language in the statute or bond explicitly limiting application to intrastate transactions. See *Mawyer v. Lumbermens Mutual Casualty*, 237 Va. 299, 302, 377 S.E.2d 401 (1989); *So. Sea. Auto Auction v. W. Cas.*, 41 Or. App.

707, 711, 598 P.2d 1269 (1979). The district judge did not discuss the rationale of the previous contrary decision from one of his colleagues. Rather, because Mo. Rev. Stat. § 301.560.1(4) (2002) did not explicitly provide for the bonds to apply outside Missouri, and Carlson had provided no evidence that the Missouri Legislature intended the bonds to have extraterritorial application, Mid-Continent prevailed on the garnishment.

Under Missouri law, the scope of a surety's obligation under a statutory bond is prescribed by the governing statute and by the language employed in the bond itself. *Home Indemnity Co. v. State of Missouri*, 78 F.2d 391 (8th Cir. 1935) (citing *Zellars v. National Surety Co.*, 210 Mo. 86, 108 S.W. 548 [1908]). The terms and provisions of the governing statute are read into the bond as if they were incorporated in it. *In re Moore*, 282 S.W.2d 856, 860 (Mo. App. 1955).

Missouri's Section 301.560.1(4) reads:

"Every applicant as a new motor vehicle franchise dealer, a used motor vehicle dealer, a wholesale motor vehicle dealer, or boat dealer shall furnish with the application a corporate surety bond or an irrevocable letter of credit as defined in section 400.5-103, RSMo, issued by any state or federal financial institution in the penal sum of twenty-five thousand dollars on a form approved by the department. The bond or irrevocable letter of credit shall be conditioned upon the dealer complying with the provisions of the statutes applicable to new motor vehicle franchise dealers, used motor vehicle dealers, wholesale motor vehicle dealers and boat dealers, and the bond shall be an indemnity for any loss sustained by reason of the acts of the person bonded when such acts constitute grounds for the suspension or revocation of the dealer's license. The bond shall be executed in the name of the state of Missouri for the benefit of all aggrieved parties or the irrevocable letter of credit shall name the state of Missouri as the beneficiary; except, that the aggregate liability of the surety or financial institution to the aggrieved parties shall, in no event, exceed the amount of the bond or irrevocable letter of credit. The proceeds of the bond or irrevocable letter of credit shall be paid upon receipt by the department of a final judgment from a Missouri court of competent jurisdiction against the principal and in favor of an aggrieved party."

The defendants' bonds provide in relevant part:

"THE CONDITION of the above obligation is such that WHEREAS the Principal has applied for the issuance of a Motor Vehicle and/or Boat Dealer's license and presents this bond in accordance with said statute.

"NOW, THEREFORE, if the aforesaid Principal shall faithfully comply with the provisions of the State of Missouri statutes applicable to new motor vehicle franchised dealers, used motor vehicle dealers, wholesale motor vehicle dealers, and boat dealers, and shall indemnify any person dealing or transacting business with the principal for any loss sustained by any person by reason of the acts of principal provided such acts of principal constitute grounds for suspension or revocation of Principal's license, then this obligation to be void; otherwise, to remain in full force and effect."

On this appeal, Carlson argues the district court erred in holding that an express statutory provision is required before Missouri dealer bonds will have extraterritorial application. Without appellate precedent in Kansas, a survey of the precedents from other jurisdictions is helpful and appropriate.

The first major case to consider a similar issue was *Ore-Ida Potato Products, Inc.*, in which the plaintiff potato grower sought to recover on a statutory farm produce dealer's bond issued to an Idaho dealer who failed to make payment on two purchases of potatoes in Oregon. The parties did not dispute that both transactions took place entirely in Oregon. The plaintiff argued that the dealer's bond covered the transactions because the phrases "any person," "any dealer or broker," "every dealer," etc., were used in the Idaho statute. The Idaho Supreme Court disagreed:

"An examination of this Act . . . does not disclose any express phraseology designed to extend to transactions consummated 'fully, wholly and entirely,' . . . in a state foreign to Idaho.

"Appellant cannot be permitted the extraterritorial interpretation of [the Act] which it seeks. The bond furnished by a produce dealer under the Act must be measured by the law of Idaho under which it was written . . . . Statutes are intended to apply and be confined in their operation to persons, property and rights which are within the territorial jurisdiction of the law-making power. The Act does not expressly provide for extraterritorial application. In the absence of any extraterritorial phraseology contained in such Act, it cannot be construed to have an extraterritorial effect, on the theory that the legislature so intended." 87 Idaho at 193-94.

Next, in *Peerless Ins. Co.*, an automobile auctioneer sought recovery against a motor vehicle dealer licensed in Colorado and the surety that issued its bonds. The relevant statutes provided that the dealer must file a bond " 'conditioned that said applicant [for a license] shall not practice fraud, make any fraudulent representa-

tion or violate any of the provisions of this article in the conduct of the business for which he is licensed,' " and " '[i]f any person shall suffer any loss or damage by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer . . . such person shall have a right of action against such dealer . . . and the sureties upon [his bond].' " 29 Colo. App. at 439 (quoting Colo. Rev. Stat. §§ 13-11-9, 13-11-11(1) [1963]).

The dealer admitted that it committed fraud by writing bad checks to the auctioneer in Indiana, but the surety argued the bond's coverage was limited to acts occurring in Colorado. Like the plaintiff potato grower in the Idaho case, the Indiana auctioneer argued that the use of the phrases "any fraud" and "any person" in the statute gave it extraterritorial effect by implication. The Colorado Court of Appeals agreed with the surety, relying upon *Ore-Ida Potato Products, Inc.*

In *Lensing*, 249 N.W.2d 608, the court considered whether the Iowa statute requiring each motor vehicle dealer to furnish a bond indemnifying "any person" suffering a loss caused by the dealer's failure to comply with the terms of the Iowa statutes protected an aggrieved nonresident purchaser who had suffered damages as a result of an out-of-state sale. The court noted that a surety's liability may not be enlarged by implication and that statutory bonds should be construed in light of the purpose as expressed by the statute and discussed the general rule set forth in 73 Am. Jur. 2d, Statutes § 359, p. 492, which reads:

"Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication. Accordingly, a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it. These rules apply to a statute using general words, such as 'any' or 'all,' in describing the persons or acts to which the statute applies. They are also applicable where the statute would be declared invalid if given an interpretation resulting in its extraterritorial operation."

Relying on *Peerless* and *Ore-Ida,* the Iowa Supreme Court concluded the statutory scheme demonstrated no legislative expectation to regulate out-of-state transactions. Thus the statute had no extraterritorial effect.

The Oregon Court of Appeals was the first to break from the line of reasoning reflected by these three decisions, launching a modern trend toward surety liability.

In *So. Sea. Auto Auction,* an Oregon automobile dealer bought an automobile from a seller in Washington, stopped payment on a check written for the purchase, and then sold the automobile to another dealer. The seller sued the Oregon dealer's bond surety. The surety argued the bond was unavailable to the plaintiff because the transaction took place in Washington, relying on statutory language stating: "[N]o person shall carry on or conduct *in this state* the business of buying, selling or dealing in new or used motor vehicles . . . unless he has a license." 41 Or. App. at 709 n.1 (quoting Or. Rev. Stat. § 481.305[1]).

The court found the phrase "in this state" did not operate to limit applicability of the bond geographically but rather to clarify the requirement of a license to conduct business lawfully in Oregon. The applicable statutes did not prescribe territorial limits for the availability of the bond or require the bond to be universal; the bond's coverage was therefore not limited to transactions occurring wholly within Oregon.

The *Mawyer* case followed. In it, the plaintiff purchased a car in Virginia and later learned that a North Carolina dealer had tampered with the odometer. The plaintiff obtained a judgment against the dealer and sought to collect against the dealer's bond surety. The relevant North Carolina statute provided that "any purchaser" of a motor vehicle would have a right to recover against the dealer and the surety. The bond itself referred to the North Carolina statute and stated the dealer and the surety are " 'held and firmly bound unto the people of the State of North Carolina to indemnify any person who may be aggrieved by fraud.' " 237 Va. at 300-01. The district court dismissed the case, finding the bond did not apply to sales of automobiles occurring outside of North Carolina. According to the court, there was no evidence the statute under

which the bond was issued was intended to have any extraterritorial effect.

On appeal, the Virginia Supreme Court recognized the split in the case law. Like the Oregon Court of Appeals, it noted that no language in the statute or the bond explicitly limited the bond's application to transactions within North Carolina's borders or included transactions outside them. The court concluded a fair reading of the statute and the bond permitted extraterritorial effect because the statute granted a "purchaser" the right to recover and the bond provided indemnity to "any person" aggrieved by fraud. The obvious purpose of the bond, the court said, was to protect innocent purchasers of motor vehicles from the fraudulent acts of dealers; the court further stated that the statute and the bond should be construed broadly in favor of protecting the consumer and strictly against the fraudulent dealer and his or her surety. 237 Va. at 302.

Finally, in *Metro Milwaukee Auto Auction v. Coulson*, 604 N.W.2d 111 (Minn. App. 2000), *rev. denied* March 14, 2000, an automobile auctioneer sold a vehicle in Wisconsin to a Minnesota-licensed motor vehicle dealer who paid with a worthless check. The auctioneer brought an action to collect against the dealer and its surety. The surety argued that the dealer's bond was intended to apply only to transactions in Minnesota and that statutes had no extraterritorial effect unless the legislature expressly said as much. The surety relied upon language in the statute and the bond to the effect that the bond was for the benefit of the State of Minnesota and any transferor, seller, or purchaser of motor vehicles for monetary loss caused by the failure of the dealer to meet the obligations imposed by the laws of Minnesota. The surety also pointed to the following statutory language: " 'It is the intent and purpose of this section to establish a uniform statewide system of bonding motor vehicle dealers.' " 604 N.W.2d at 115 (quoting Minn. Stat. § 168.27, subd. 25 [1998]).

The Minnesota Court of Appeals found that neither the statute nor the bond contained any language limiting the bond's application to transactions occurring in Minnesota. Rather, if the legislature had intended to impose such a geographical limitation, it could

have so stated. Instead, a plain reading of the statute led to the conclusion that a dealer could not obtain a license without first providing financial security to protect all customers and all others with whom the dealer would conduct transactions. The statute clearly protected against losses caused by Minnesota-licensed dealers, and it would subvert the plain meaning of the statute to shift the focus to the geographical setting of the transaction leading to the loss.

The Missouri Attorney General weighed in on the question before us in Opinion Number 41-90 (August 27, 1990). The issue prompting the opinion was whether motor vehicle bonds issued under § 301.560 protected an aggrieved party suffering loss because of the acts of the person bonded, if the grounds for suspension or revocation of the bonded person's license were activities outside of Missouri.

The attorney general first noted that the scope of the obligation under a statutory bond is prescribed by the governing statute. Therefore, the opinion was based on interpretation of the language of the statute and of the rulings from the courts of other jurisdictions.

The attorney general recognized the split between courts that hold a statute must explicitly provide for extraterritorial effect before a surety will be liable on a dealer bond, *i.e.*, *State Surety Co.*, 249 N.W.2d 608, *Peerless Ins. Co.*, 29 Colo. App. 436, *Ore-Ida Potato Products*, 87 Idaho 185, and those that hold a bond will be given extraterritorial effect in the absence of limiting statutory language, *i.e.*, *So. Sea. Auto Auction*, 41 Or. App. 707, and *Mawyer*, 237 Va. 299. The attorney general criticized the latter type of case for failing to address the general rule that legislation is presumed to operate only within the territory of the enacting state, concluding: "[F]or the reasons articulated by the courts of Iowa and Colorado, . . . the motor vehicle dealer bonds required by Section 301.560 RSMo Supp. 1989, do not provide coverage for activities occurring outside of Missouri." Mo. Att'y Gen. Op. No. 41-90 at 3.

Although not discussed by the parties on appeal, the Alabama Supreme Court has adopted a third approach to the issue before

us. In *Ex parte Old Republic Sur. Co.*, 733 So. 2d 881 (Ala. 1999), Old Republic, a Wisconsin corporation licensed to do business in Alabama, issued a used motor vehicle dealer bond to Rickey Harrell, a licensed Alabama automobile dealer, in accordance with the Alabama automobile dealer bond statute. Harrell purchased vehicles in Illinois, using checks that were later returned due to insufficient funds. The Illinois dealer, Auction Way, successfully sued Harrell and Old Republic to recover for its losses.

The Alabama Court of Civil Appeals relied upon *So. Sea. Auto Auction*, 41 Or. App. 707, in finding that the mere requirement of a bond by no means prescribes territorial limitations on its availability. Nor does it require the bond to be universal. The court found that the absence of a territorial limitation among the express limitations in the statute meant Old Republic was required to indemnify Auction Way.

On appeal to the Alabama Supreme Court, Old Republic argued that the Court of Civil Appeals failed to take the general rule of statutory construction set forth in 73 Am. Jur. 2d, Statutes § 359 into account. The court agreed that a statute must explicitly provide for extraterritorial effect in order to have it, and it acknowledged the competing lines of previous cases. It declined, however, to follow either.

"Despite the limitations on the operation of Alabama statutes, Old Republic's contention that the statute cannot operate as to a transaction that took place out of state is misplaced. This is not a case where the enforcement of the statute would impose a burden on a noncitizen of Alabama or would impose upon a party a burden based upon a right or claim that did not vest while the party was in Alabama. Old Republic is a corporation qualified to do business in Alabama. It agreed to insure those who dealt with Harrell, by issuing a dealer bond made payable to the State of Alabama. Although the statute may depend on an out-of-state transaction, it operates only on an in-state dealer bond. The statute simply provides that if a dealer does not comply with certain requirements, that dealer's bond shall be payable in favor of any person who recovers a judgment against the dealer for his failure to comply with those requirements. Thus, the statute operates as to an in-state dealer bond, the payment of which depends on the dealer's compliance with a contract that is executed either in or out of state. The burden imposed by § 40-12-398 was based upon a right that vested when Auction Way obtained the default judgment against Harrell. At that time, Harrell's dealer bond was located in Alabama, and Old Republic was qualified to do business in Ala-

bama. Accordingly, requiring Old Republic to indemnify Auction Way to the extent of Harrell's dealer bond does not present a question of the extraterritorial application of a statute." *Ex parte Old Republic Sur. Co.,* 733 So. 2d at 885.

We find the Alabama court's reasoning most persuasive. In our view, extraterritorial application of the Missouri statute is not truly required for garnishment in this case. Rather, we need only apply the Missouri statute to a Missouri licensee and the surety who agreed to issue dealer bonds in Missouri in the course of its authorized business in that state. Mid-Continent is not an innocent bystander who is being harmed by Missouri law; rather, Mid-Continent knowingly issued dealer bonds to Missouri dealers in accordance with Missouri law. Once the judgments were filed in the Missouri court, the right of Carlson to be indemnified arose under the Missouri statute.

Reversed and remanded with directions to enter an order of garnishment.