Filed 10/26/23  Munoz v. Ojogho CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JOSE MUNOZ, | B312317 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 20STCP03450 |
| ENYINNAYA CHRISTIAN OJOGHO, | |
| Defendant; | |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Respondent. | |

| | |
|---|---|
| JOSE MUNOZ et al., | B316065 |
| Plaintiffs and Appellants, | Los Angeles County |
| | Super. Ct. No. BS172763 |
| v. | |
| A-1 SOCCER WAREHOUSE, INC., | |
| Defendant; | |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Respondent. | |

APPEALS from postjudgment orders of the Superior Court of Los Angeles County, David Sotelo and Stuart M. Rice, Judges. Affirmed.

Law Office of Eugene Lee and Eugene D. Lee for Plaintiffs and Appellants.

Lanak & Hanna and Mac W. Cabal for Respondent.

---

### INTRODUCTION

This is the second time this matter has come before us. In the first appeal, we affirmed the superior court's dismissal of defendant A-1 Soccer Warehouse, Inc.'s (A-1) de novo appeals from separate Labor Commissioner awards totaling more than $500,000 in favor of 13 of its employees, including current appellants and plaintiffs Jose Munoz and Jackelinne Chonay.

The superior court had dismissed A-1's appeals after finding it failed to post with the court the undertaking required by Labor Code[1] section 98.2, subdivision (b) (section 98.2(b)). Relevant here, as to its de novo appeals of the awards in favor of plaintiffs Munoz and Chonay, A-1 had filed notices of appeal with the superior court, attaching uncertified copies of corporate surety appeals bonds issued by current nonparty respondent Great American Insurance Company (Great American). A-1 asserted it had posted the original bonds with the Labor Commissioner. Section 98.2(b) required A-1—as a condition to filing the appeals—to "first post an undertaking with the *reviewing* court in the amount of the . . . award." (Italics added.)

Plaintiffs Munoz and Chonay now appeal from orders— entered by two different superior court judges—denying motions to enforce judgments (1) jointly and severally against defendant Enyinnaya Christian Ojogho, as bond principal, and against Great American, as surety on the bond (Judge Sotelo's order); and (2) jointly and severally against defendant A-1, as bond principal, and against Great American, as surety on the bond (Judge Rice's order). Plaintiffs also appeal from Judge Rice's order denying their request for attorney fees. Defendants A-1 and Ojogho are not parties to this appeal.

We affirm the orders.

---

[1]     All undesignated statutory references are to the Labor Code unless noted otherwise.

## FACTS AND PROCEDURAL BACKGROUND[2]

On May 18, 2018, the Labor Commissioner issued separate monetary awards to 13 of A-1's employees, finding A-1 and Ojogho each separately liable—for the full amount of each employee's award—for various Labor Code violations, including unpaid overtime, denied meal and rest breaks, and penalties. Munoz and Chonay were awarded $29,988.44 and $85,658.78, respectively. In its decision accompanying the awards, the Labor Commissioner found Ojogho—the CEO of A-1—was individually liable for plaintiffs' wages both as the alter ego of A-1 and under section 558.1, which provides owners, directors, officers, and managing agents of an employer may be held responsible for wage and hour violations.

A-1 timely filed notices of appeal in the superior court.[3] (Ojogho did not file any notices of appeal with the superior court.) The 13 de novo appeals were consolidated.

As a condition to filing its appeals under section 98.2, A-1 first had to post undertakings with the superior court in the amount of each award. (§ 98.2(b).) As we noted, for its appeals from the awards to employees Munoz and Chonay, A-1 attached

---

[2]   We draw the facts underlying the judgments against A-1 and Ojogho from our prior opinion. (See *Munoz v. A-1 Soccer Warehouse, Inc.* (Mar. 19, 2020, B295516) [nonpub. opn.] (*Munoz I*).)

[3]   Under section 98.2, subdivision (a), a party may seek de novo review of a Labor Commissioner's order, decision, or award by filing an appeal to the superior court within 10 days after its service, or within 15 days if served by mail, as occurred here. (Code Civ. Proc., § 1013, subd. (a).)

4

to its notices of appeal copies of corporate surety bonds issued by Great American in the respective award amounts. The bonds bear the caption and case numbers from Munoz's and Chonay's underlying cases filed with the Labor Commissioner. They each state:

> "Whereas, Enyinnaya Christian Ojogho, as Principal, desire [*sic*] to give an undertaking for an Appeal as provided by Labor Code Section 98.2. [¶] Now, Therefore, Great American Insurance Company, a corporation authorized to transact the business of Surety in the State of California, does hereby obligate itself, its successors and assigns to the plaintiff as shown above under said statutory obligations in the sum of [the Labor Commissioner's award]."[4]

The bonds are "[s]igned, sealed and dated" as of June 7, 2018, by Great American's authorized attorney-in-fact.

On November 26, 2018, the superior court held a hearing on whether the appeals should be dismissed for A-1's failure to post undertakings with the court. As part of its opposition, A-1's attorney declared that for each appeal from the Labor Commissioner's awards, "bond/undertaking[s] were filed."

The court took the matter under submission and issued its ruling later that day. There is no reporter's transcript

---

[4]    Because Ojogho was not a party to the appeal, in *Munoz I*, we described the bond as stating, "A[-]1's principal 'desire[s] to give an undertaking for an Appeal as provided by Labor Code Section 98.2.' " (*Munoz I*.)

5

of the hearing. The court found that it lacked jurisdiction "because no undertaking was posted with the court in any of the consolidated cases" and dismissed the appeals.

On December 4, 2018, new counsel for A-1 substituted into the case and moved the court to reconsider its order dismissing the consolidated cases. The motion asked the court to reconsider its ruling as to the appeals involving Munoz and Chonay because A-1 posted surety bonds in those two cases. A-1's counsel argued that its former attorney may not have made the court aware that on June 7, 2018, A-1 had posted undertakings of corporate surety bonds through a licensed surety under section 98.2 obligating the surety to pay the stated amounts to those two employees. A-1's counsel attached to his declaration copies of the surety bonds and copies of the notices of appeal A-1 had filed in those two cases that included the copies of the surety bonds.

On December 31, 2018, the court heard and denied the motion for reconsideration. There is no reporter's transcript of the hearing. The court then signed the order dismissing the consolidated actions with prejudice. As discussed, we affirmed that order on March 19, 2020. In so doing, we noted A-1 had presented no declaration to the trial court stating it had posted the original bonds with the Labor Commissioner, and the uncertified copies attached to its notices of appeal bore no indication—such as a dated file stamp—that they had been posted or filed with the Labor Commissioner. Nor did the appellate record include a reporter's transcript or settled statement of the hearing on the court's dismissal of A-1's de novo appeals. We thus only could infer the trial court found the uncertified copies of the corporate surety bonds

insufficient proof that A-1 indeed had posted the required bonds. Our opinion became final on May 27, 2020.[5]

Following remittitur, on September 18, 2020, the trial court entered judgment in favor of each of the 13 plaintiff-employees, including Munoz and Chonay, and against A-1. For each plaintiff-employee, the judgment ordered the section 98.2 "undertaking[s]/bond[s] posted by Defendants with [the] Court . . . be released and delivered" to plaintiffs' counsel's trust account. That same day, plaintiffs' counsel asked Great American to release the two bonds. Great American denied plaintiffs' claims on October 7, 2020, having concluded the bonded principal—Ojogho—was not named in the awards included in A-1's de novo appeal packages filed with the superior court and not liable on the judgment entered against A-1.

Because Ojogho never filed a notice of appeal—nor paid the Labor Commissioner awards—on October 16, 2020, the Labor Commissioner filed 13 separate actions with the superior court asking the clerk to enter judgment against Ojogho in the amount

---

[5] Meanwhile—apparently unbeknownst to plaintiffs—on May 17, 2019, Ojogho's and A-1's original attorney Wilfred Aka sent a letter on their behalf to Great American's agent stating he was returning the original bond on Chonay's award for $85,658.78 and asking for the return of the cash collateral held by Great American. Around June 19, 2019, on Ojogho's instructions, Great American wired the $85,658.78 to an account held by Ojogho American Enterprises. The original bond for Chonay then was destroyed. (The $29,988.44 bond issued on Munoz's award was not returned or destroyed at this point; Aka purportedly had the original and was out of the country.)

7

of the Labor Commissioner awards plus interest and filing fees. The clerk entered judgment that same day. Munoz's and Chonay's actions against Ojogho were assigned to different judicial officers.

On December 14, 2020, in the Munoz-Ojogho action, Munoz moved to enforce judgment on the bond jointly and severally against Ojogho, as bond principal, and Great American, as surety, and for attorney fees.[6] On January 25, 2021, Judge Sotelo heard Munoz's motion and denied it without prejudice as to Great American. Judge Sotelo agreed with Great American that, because Ojogho neither filed an appeal nor posted a bond with the court, the bond was not effective and thus the provision for bond forfeiture under section 98.2(b) did not apply.

Munoz filed a motion for reconsideration on February 4, 2021, which Judge Sotelo denied on April 5, 2021, after a hearing. The order states,

> "A-1 filed notices of appeal, thirteen in total, while Ojogho did not. [¶] Additionally, A-1 filed undertakings for thirteen appeals. Defendant Ojogho filed these undertakings on A-1's behalf and one of these undertakings was an appeal bond of [Munoz's] award. [¶] The issue is whether Defendant Ojogho filed this bond on his own behalf. Surety [Great American] argues that [Ojogho] filed the bond on behalf of

---

[6]     Chonay filed a nearly identical motion in the Chonay-Ojogho action but was ordered to file a notice of related case. In April 2021, Judge Rice ordered the Ojogho actions related to the consolidated A-1 action and reassigned to him.

8

A-1 but not himself. [¶] . . . [¶] Again, the court finds that Ojogho did not post the bond on his own behalf. The language of the bond controls over its caption: it states that Ojogho, as A-1's principal, desires to file an undertaking. It does not say that [Ojogho] is posting the bond in his individual capacity. Thus, [Ojogho] filed the bond on behalf of A-1 and not in his individual capacity."

Munoz appealed the January 25, 2021 order on March 25, 2021.

In May 2021, in the A-1 action, plaintiffs moved to enforce the A-1 judgment jointly and severally against A-1 and Ojogho, as bond principals, and Great American, as surety, and for attorney fees. The trial court, Judge Rice, denied the motion—on the ground Ojogho was not a party to the A-1 action and had not filed an appeal—without prejudice to plaintiffs filing a motion for judgment as to A-1 and Great American, as surety. The court ordered plaintiffs and Great American to meet and confer to see if they could reach a stipulation as to "A-1's appeal bonds pertaining to Plaintiffs." They did not reach a stipulation.

Accordingly, plaintiffs filed a second motion in July 2021 —this time for judgment jointly and severally against A-1, as bond principal, and Great American, as surety, plus attorney fees. Great American again opposed the motion, arguing A-1 was not the bond principal—thus, Great American was not liable to pay A-1's judgment debt—and the bonds were not posted with the superior court and, therefore, not subject to forfeiture. With its opposition, Great American filed the June 6, 2018 supersedeas bond applications Ojogho submitted through Great American's agent. Ojogho is named as the applicant, and the

box "Individual" is checked.[7]  Ojogho also signed indemnity agreements on behalf of the surety in his individual capacity.[8] (The bond applications ask the applicant to attach a copy of the judgment being appealed.  The copies of the applications filed with Great American's opposition do not include any attachments.)

Judge Rice heard plaintiffs' motion on July 29, 2021. Plaintiffs' counsel argued this court had "found that the bonds were posted and issued by A-1's principal Ojogho . . . on behalf of A-1."  He thus argued that interpretation of the bonds was controlling under the principle of the law of the case.  Counsel also noted Judge Sotelo, in the minute order denying Munoz's motion for reconsideration, also had found Ojogho filed the bond on behalf of A-1, not in his individual capacity, and had noted Great American argued Ojogho filed the bond on behalf of A-1. Thus, counsel invoked the doctrine of judicial estoppel, arguing Great American had taken contradictory positions.  The court permitted the parties to submit supplemental briefs on those two issues and took the matter under submission.

On August 19, 2021, the court issued its ruling denying plaintiffs' motion.  Judge Rice reasoned that, because A-1—

---

[7]     The other boxes available to be checked are "Partnership," "LLC," "Corporation," and "Sub-S Corporation."

[8]     Ojogho signed in the space under the statement, "If applicant is an individual, sign here."  The next section states, "If applicant is a corporation, limited liability company or a partnership, sign here."  That signature line is blank. (Capitalization and boldface type omitted.)

the only judgment debtor who attempted to appeal from the Labor Commissioner's award—was not the principal on the bonds, there was no basis to forfeit them to plaintiffs. Judge Rice also found this court had not determined the issue before him— "whether the [b]onds procured by Ojogho identifying Ojogho as bond principal are subject to forfeiture due to A-1's failed appeal." The court also found Great American did not take an inconsistent position with Judge Sotelo, where the issue was whether Ojogho had posted the bonds triggering their forfeiture, not whether A-1 was the bond principal.

Munoz and Chonay appealed Judge Rice's order. On the parties' motion, we consolidated the appeal from Judge Sotelo's order (B312317) and the joint appeal from Judge Rice's order (B316065) for all purposes under case number B312317.

## DISCUSSION

### 1. *Standards of review*

Plaintiffs contend our standard of review is de novo because their appeals raise issues of statutory construction—whether the appeal bonds were effective on execution under the Bond and Undertaking Law (Code Civ. Proc., § 995.010 et seq.)—and contractual interpretation—whether the bonds were issued to Ojogho only or to A-1. Great American contends the substantial evidence standard of review applies because "this matter also turns on factual matters, including the contents of the Bonds."

To the extent resolution of an issue on appeal turns on the trial court's factual findings, we review those findings for substantial evidence. (*Southern California Edison Co. v. Severns* (2019) 39 Cal.App.5th 815, 822.) The trial court's construction and application of a statute, however, concern legal questions that we review de novo. (*Dowling v. Farmers Ins. Exchange*

11

(2012) 208 Cal.App.4th 685, 694.)  We also "independently review the trial court's interpretation of a contract, including the resolution of any ambiguity, unless the interpretation depends on the trial court's resolution of factual questions concerning the credibility of extrinsic evidence."  (*Ibid.; Filtzer v. Ernst* (2022) 79 Cal.App.5th 579, 583 (*Filtzer*) [de novo review "applies even where conflicting inferences may be drawn from undisputed extrinsic evidence, 'unless the interpretation turns upon the credibility of extrinsic evidence' "].)

As to the other issues raised on appeal, the determination of whether the elements necessary to apply the doctrine of judicial estoppel are satisfied also is a question of law that we review de novo.  (*Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 46; see also *Filtzer, supra*, 79 Cal.App.5th at p. 583.)  Whether to apply the doctrine if the elements are present is within the discretion of the trial court.  (*Blix*, at p. 46; *Filtzer*, at p. 583.)  " '[T]he propriety or amount of statutory attorney fees to be awarded' " also is reviewed for abuse of discretion, " 'but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

## 2.     *Section 98.2*

Under section 98.2, a party may appeal an award of the Labor Commissioner to the superior court, "where the appeal shall be heard de novo."  (§ 98.2, subd. (a).)  "[T]he filing of the notice of appeal vests jurisdiction in the superior court to conduct the trial de novo."  (*Palagin v. Paniagua Construction, Inc.* (2013) 222 Cal.App.4th 124, 132 (*Palagin*).)

As a condition to an employer filing such an appeal, the employer "shall first post an undertaking with the reviewing court in the amount of the . . . award." (§ 98.2(b).) "If the employer fails to pay the amount owed within 10 days of entry of the judgment, dismissal, or withdrawal of the appeal, or the execution of a settlement agreement, a portion of the undertaking equal to the amount owed, or the entire undertaking if the amount owed exceeds the undertaking, is forfeited to the employee." (*Ibid.*; *Adanna Car Wash Corp. v. Gomez* (2023) 87 Cal.App.5th 642, 650 ["The appeal bond is forfeited to the employee where the employer's appeal fails or is withdrawn, and the employer does not timely pay the award."].) If no notice of appeal is filed within the statutory deadline, the commissioner's award is deemed the final order. (§ 98.2, subd. (d).)

The "immediate purpose" of this undertaking requirement "is to provide assurance that a judgment in favor of the employee will be satisfied." (*Palagin, supra*, 222 Cal.App.4th at p. 130.) The "broader purpose of this provision . . . is to 'discourage employers from filing frivolous appeals and from hiding assets in order to avoid enforcement of the judgment.' " (*Ibid.*)

Generally, the posting or filing of statutorily required bonds and undertakings is governed by the Bond and Undertaking Law, codified at Code of Civil Procedure section 995.010 et seq. (*Lewin v. Anselmo* (1997) 56 Cal.App.4th 694, 698 (*Lewin*).) "[T]he statutory scheme applies to any 'bond or undertaking executed, filed, posted, furnished, or otherwise given as security pursuant to any statute of this state, except to the extent the statute prescribes a different rule or is inconsistent.' " (*Ibid.*, quoting Code Civ. Proc., § 995.020, subd. (a).)

13

### 3.   *The law of the case doctrine does not apply*

We first address plaintiffs' contention this court's description of the bonds as stating—"A-1's principal 'desire[s] to give an undertaking for an Appeal as provided by Labor Code Section 98.2' "—reflected our finding in *Munoz I* that the bonds were issued on A-1's behalf and that purported finding now is the law of the case.  "Under the law of the case doctrine, when an appellate court ' "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . ." ' [Citation.]  Absent an applicable exception, the doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong.' [Citation.]  As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact.  [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)  "The doctrine of law of the case . . . governs later proceedings in the *same case* [citation] with regard to the rights of the *same parties* who were before the court in the prior appeal.  [Citations.]" (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 668.)

First, Great American was not a party to *Munoz I*, and neither plaintiffs nor A-1 represented Great American's rights or interests in that appeal.  That ground alone renders the law of the case doctrine inapplicable here.

More importantly, we did not make a finding in *Munoz I* that A-1 was the bond principal.  Because Ojogho was not a party to the *Munoz I* appeal, we referred to Ojogho by his title rather than by his name.  Hence, we substituted "A-1's principal" for

14

"Ojogho." The above description of the bonds does not rewrite them to state A-1 was the bond principal, however. As Great American notes, we were not asked to determine whether A-1 was the "bond principal" in *Munoz I*. The question before us was whether the trial court erred in dismissing A-1's de novo appeals for not properly posting undertakings as required by section 98.2. A-1 represented to the trial court, and this court, that by providing copies of the bonds it had posted with the Labor Commissioner, it had complied with the undertaking requirement of section 98.2 by "provid[ing] instruments that obligated it to pay the amount of the awards if its appeals were unsuccessful." Plaintiffs never argued the bonds failed to comply with section 98.2 because Ojogho, not A-1, was named "as Principal." Accordingly, contrary to plaintiffs' contention, this court had no need to make any findings with respect to the nature of the bonds themselves to determine whether the court had erred in finding A-1 had not posted them in accordance with the requirements of section 98.2.

4.    ***We cannot interpret the bonds as having been issued on behalf of A-1***

Plaintiffs contend Ojogho obtained the bonds as A-1's principal and thus the judgments against A-1 may be enforced against Great American as the surety under the bonds. Great American contends that, as the bond contracts identify Ojogho as the only bond principal, it did not agree to answer for A-1's obligations and cannot be compelled to do so.

"A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another." (Civ. Code, § 2787.) A " 'surety cannot be held beyond the express terms of [its] contract.' " (*G & W Warren's, Inc. v. Dabney* (2017) 11

15

Cal.App.5th 565, 574 (*G & W*).) "In interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts." (Civ. Code, § 2837.) "The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125–1126 (*Walt Disney*); *Filtzer, supra,* 79 Cal.App.5th at p. 584 ["If a contract's language is clear and unambiguous, intent is determined solely by the language within the four corners of the contract."].)

Although extrinsic evidence is inadmissible to "add to, detract from, or vary the terms of a written contract" (*Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & R. Co.* (1968) 69 Cal.2d 33, 39), it is admissible "to interpret an agreement when a material term is ambiguous" (*Walt Disney, supra,* 162 Cal.App.4th at p. 1126). " 'Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.' " (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) Thus, extrinsic evidence may be used to determine the parties' objective intent where it "reveals that apparently clear language in the contract is, in fact, susceptible to more than one reasonable interpretation." (*Walt Disney,* at p. 1126, citing *Pacific Gas,* at p. 37.)

The bonds—prepared by Great American—do not define the term "Principal." In this context—where Ojogho and A-1

16

both were named defendants in the Labor Commissioner cases and identified as defendants in the bond captions, Ojogho indisputably was the principal of A-1 and was found to be its alter ego, and Ojogho and A-1 each was liable for the full amount of the awards—the term "as Principal" is susceptible to more than one meaning.  Arguably, because A-1, not Ojogho, was the defendant who appealed from the awards—and attached copies of the bonds as proof of its section 98.2 undertakings—Ojogho intended to provide the bonds "as Principal" to A-1.  Moreover, at the time it issued the bonds, Great American knew A-1 was a co-defendant with Ojogho—by the fact the case caption on the face of the bonds includes A-1 as a defendant.  Presumably, Great American also would have read the Labor Commissioner awards before issuing the bonds.  The Labor Commissioner's written findings of fact, legal analysis, and conclusions were attached to the awards entered against Ojogho, as an individual (and against A-1).  Great American thus would have known Ojogho was A-1's CEO and, therefore, its principal, and that the Labor Commissioner had found Ojogho to be A-1's alter ego.

Based on these circumstances surrounding Ojogho's procurement of the bonds—although A-1 is identified only in the bonds' captions—one reasonably could interpret the statement, "Ojogho, as Principal, desire [*sic*] to give an undertaking for an Appeal as provided by Labor Code section 98.2," as referring to Ojogho in his capacity of principal to A-1.  Certainly, A-1 (and, thus, Ojogho) interpreted the bonds this way.  A-1 represented to the trial court, and to this court, that it had provided the bonds in the amounts of Munoz's and Chonay's awards as security under section 98.2 for its appeals from those awards.  On appeal,

17

A-1 also represented the surety bonds it provided ensured plaintiffs would be paid if it did not prevail on its appeals, and "[t]he obligation to pay any amount owed was not altered because the originals were filed with the Labor Commissioner."

Nevertheless, Great American presented evidence—on which the trial court relied—demonstrating Ojogho did not apply for the bonds as A-1's principal; thus, Great American did not agree to answer for A-1's obligations. The bond application states Ojogho is an individual, and he signed the corresponding indemnity agreements in his individual capacity. A-1 is neither identified in the bond applications or indemnity agreements, nor, as we said, in the bonds themselves, except in the captions. Nothing in the record suggests Ojogho otherwise made clear to Great American his intent to use the bonds as security for the judgments entered against A-1. (See *G & W, supra*, 11 Cal.App.5th at p. 575 [" ' "Contract formation is governed by objective manifestations, not the subjective intent of any individual involved. [Citations.] The test is 'what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.]" [Citation.]' [Citation.] Thus, '[t]he parties' undisclosed intent or understanding is irrelevant to contract interpretation.' "].)

Accordingly, when reading the bond contracts in connection with the uncontradicted evidence of the bond applications and indemnity agreements, we cannot infer *Great American* agreed, or should have known it was agreeing, to provide the bonds to secure the awards entered against A-1 instead of—or in addition to—those entered against Ojogho individually. We thus conclude the evidence demonstrates the parties' objective mutual intent was to name only Ojogho as the bond principal.

18

Plaintiffs argue the trial court relied on inapposite, nonbinding cases applying out of state law in reaching this same conclusion. The two cases, *Contractors Equip. Maintenance v. Bechtel Hanford* (9th Cir. 2008) 514 F.3d 899 (applying Washington law), and *Goldberg, Marchesano v. Old Republic* (D.C. App. 1999) 727 A.2d 858 (applying law applicable to the District of Columbia), applied universal contract interpretation principles to surety contracts. The courts in both cases found the sureties could be liable only for the principal named in the bonds. (*Contractors*, at pp. 904–905; *Goldberg*, at p. 861.) In *Contractors*, a bond posted in connection with an appeal by a contractor and an insurance company named the insurance company alone as principal. (*Contractors*, at p. 904.) In *Goldberg*, the supersedeas bond the plaintiff sought to enforce with respect to a judgment against a corporation and the corporation's president, named the president, but not the corporation, as the bond principal. (*Goldberg*, at p. 860.) Plaintiffs argue the bonds here are distinguishable because they named A-1 in the Labor Commissioner case caption. As we discussed, that A-1 is named in the case caption does not demonstrate Great American contracted to issue the bonds on behalf of A-1.

Plaintiffs also argue California policy requires any ambiguity in a surety bond to be construed "in favor of protecting the beneficiaries so as to ensure collection of their judgments." (Citing the following statement in *Lewin, supra*, 56 Cal.App.4th at p. 700: "The procedural requirements applicable to all bonds set forth in the Bond and Undertaking Law serve to protect the rights of the beneficiary and to protect the integrity of the bonding procedures.") Here, however, we have found Great

19

American did not agree to bond A-1's obligations; thus, plaintiffs were not beneficiaries of any bond securing payment of the awards against A-1.

**5.** ***The bonds were not subject to forfeiture because Ojogho did not attempt to file any notices of appeal, and A-1 was not the bond principal***

  a.   *Great American's appeal bond was not subject to forfeiture to satisfy Munoz's judgment against Ojogho*

Plaintiffs note the court's order denying Munoz's motion for reconsideration described the language of the bonds as stating "Ojogho, as A-1's principal, desires to file an undertaking" and reasoned "the bond does not say that it was on Ojogho's behalf." Our construction of the bonds as naming only Ojogho as the bond principal does not lead us to conclude Judge Sotelo erred in denying Munoz's motion to forfeit the bond to satisfy his judgment against Ojogho, however. The court found Munoz could not enforce the appeal bond on the Ojogho judgment based on the undisputed fact Ojogho never filed notices of appeal from the Labor Commissioner awards entered against him individually, and also never filed or posted the bond on his own behalf.[9] (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 ["On appeal, we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself."].) Although

---

[9]   In its order denying the motion for reconsideration, Judge Sotelo also found Ojogho filed the bond on A-1's behalf, noting it was A-1 that attempted to post the bond. We agree Ojogho used the bonds Great American issued to him in an attempt to secure A-1's notices of appeal under section 98.2. That does not change the fact Great American did not agree to do so.

Ojogho obtained the bonds and—acting for A-1, as its principal—provided copies of those bonds as proof of the purported undertakings supporting A-1's notices of appeal under section 98.2, Ojogho never submitted, or attempted to submit, those bonds to the court in connection with any appeal from the awards entered against him individually.

As Munoz did below, plaintiffs contend that, under the Bond and Undertaking Law, specifically Code of Civil Procedure section 995.420, the bonds at issue here were "given"—and thus effective—on their execution date. Relying again on *Lewin*, which we discuss below, plaintiffs argue that, because the bonds were effective, there was no need for Ojogho to have filed them with the court for Munoz to be able to enforce the bond against Great American under section 98.2(b). We cannot read the applicable statutes to mean an appeal bond is "given" on its execution, so that it is forfeitable to a prevailing employee even where the employer has not asked the court to review the Labor Commissioner's award.

"When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose,

21

legislative history, and public policy.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165–166.)

Code of Civil Procedure section 995.420 states, in part, "Unless the statute providing for a bond provides that the bond becomes effective at a different time, a bond is effective at the time it is given or, if the statute requires that the bond be approved, at the time it is approved." (Code Civ. Proc., § 995.420, subd. (a).) Section 489.060 of the Code of Civil Procedure in turn provides, "(a) Except as provided in subdivision (b), all undertakings given pursuant to this title shall be presented to a proper court for approval and upon approval shall be filed with the court in which the action is pending. [¶] (b) If the surety on the undertaking is an admitted surety insurer, the undertaking is not required to be approved by the court."

As Great American is an admitted surety insurer—rendering court approval of the appeal bonds it issued unnecessary—plaintiffs essentially argue the bonds were given and became effective on the date Great American executed, i.e., signed, them. As plaintiffs state, a surety contract is "a third[-]party beneficiary undertaking to indemnify a person against losses resulting from the acts of the principal." (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1099.)

As with any other contract that does not specify an effective date, we agree the bonds were capable of enforcement on the date Great American signed them, June 7, 2018. But as plaintiffs note, the bonds at issue here were contracts for Great American to indemnify plaintiffs against collection of the Labor

22

Commissioner's award *pending a de novo appeal* by Ojogho.[10] (Italics added.) In other words, as of June 7, 2018, Ojogho could have posted the bonds with the court to secure de novo appeals under section 98.2 of the awards entered against him. Under section 98.2(b), Great American then would have been obligated to pay plaintiffs the amounts designated on the bonds if Ojogho failed to pay them. Thus, had Ojogho submitted the appeal bonds to the court to secure his appeals, they would have been effective without need for any preauthorization by the court.

Plaintiffs, however, read the Bond and Undertaking Law to mean that, because the bonds were "effective" as of the date Great American signed them, the bonds were subject to forfeiture to plaintiffs under section 98.2 without Ojogho having had to at least attempt to present—whether by posting, filing, or in some other manner—the bonds to the court in connection with de novo appeals from the awards entered against him. The plain language of the bonds and section 98.2 belies this interpretation.

First, the bonds themselves each are for "an Appeal as provided by Labor Code Section 98.2." Great American thus agreed to obligate itself to plaintiffs only for the purpose of securing their awards against Ojogho in connection with a section 98.2 appeal. Second, the bond states Ojogho "*desire[s] to give* an undertaking for an Appeal *as provided by* Labor Code Section 98.2." (Italics added.) Section 98.2, of course, requires

_____

[10] Plaintiffs actually assert Great American was indemnifying them against collection of their "judgments pending the de novo appeals by defendants," meaning both Ojogho and A-1. As we discussed, Great American agreed to indemnify Munoz and Chonay against only Ojogho's obligations.

23

the posting of an undertaking as a condition to the employer filing an appeal. Ojogho never filed an appeal and copies of the bonds were provided to the superior court only with A-1's notices of appeal. Thus, although Ojogho *desired* to give an undertaking under section 98.2, he did not.

Next, we must read Code of Civil Procedure section 995.420 with section 98.2. We read section 995.420 as simply stating a corporate surety bond needs no prior court approval to be effective for the purposes for which it is given as security. Logically, the fact a bond is capable of being enforced does not equate to the court's ability to order it forfeited if the party never took the action that required the bond to be given as security in the first place.

By filing an appeal of a Labor Commissioner's award with the superior court, the employer submits to the court's jurisdiction and accepts the conditions imposed by section 98.2: (1) the employer must post with the reviewing court an undertaking from a corporate surety, or a cashier's check, in the amount of the award; and (2) if the employer fails to pay the resulting judgment—or fails to pay the award in the event its appeal is withdrawn or dismissed without entry of judgment—the undertaking must be forfeited to the employee. (§ 98.2(b).) Those conditions, of course, are not imposed on the employer if the employer has not at least attempted to file an appeal under section 98.2. There would be no mechanism for the court to forfeit a section 98.2 appeal bond to the employee if no section 98.2 appeal has been filed.

Here, it is undisputed (1) Ojogho never filed any section 98.2 notices of appeal from the awards entered against him individually, and (2) the copies of the bonds filed with the court

24

were done so in connection with A-1's notices of appeal. As Ojogho never even attempted to file an appeal on his own behalf, the bonds are not subject to forfeiture under section 98.2(b). This result comports with the policy underlying section 98.2.

An employer's filing of a section 98.2 notice of appeal delays finalization of the Labor Commissioner's award and, in turn, the employer's payment of the award to the employee. As we noted, the employer's posting of an appeal bond with the court is designed to ensure there will be funds available to satisfy a judgment, and to discourage the employer from hiding its assets to avoid paying a future judgment. (*Palagin, supra*, 222 Cal.App.4th at p. 130; see also *Lewin, supra*, 56 Cal.App.4th at p. 700 [statute providing for an appeal bond "is designed to protect the judgment won in the trial court from becoming an uncollectible while the judgment is subjected to appellate review"].) Thus, a bond given to secure an appeal under section 98.2 is forfeitable to the employee even where the employer's attempted appeal fails. (See, e.g., *Chavez v. Sarumi* (2018) 36 Cal.App.5th Supp. 34, 39 (*Sarumi*) [appellate division of superior court held employer's late-filed appeal bond (naming it as bond principal) must be forfeited to employee under section 98.2(b) after trial court dismissed employer's appeal from Labor Commissioner's award for failure to file a timely bond]; *Patel v. Chavez* (2022) 85 Cal.App.5th 712, 718 (*Patel*) [holding bond posted in an attempted section 98.2 appeal that failed due to lack of proper notice was subject to forfeiture under section 98.2(b)].)

But, if an employer never files nor attempts to file an appeal within the statutory period, there is no delay in the finalization of the award. At that point, the Labor

Commissioner's order is "deemed the final order." (§ 98.2, subd. (d).) And, within 10 days of the order becoming final, the Labor Commissioner "shall file . . . a certified copy of the final order with the clerk of the superior court . . . . Judgment shall be entered immediately by the court clerk." (§ 98.2, subd. (e).) Once judgment is entered, the employee can enforce it like any other judgment. (*Ibid.*) And, "to ensure judgments are satisfied," the statute authorizes the Labor Commissioner to require the employer, as the judgment debtor, to identify its assets. (§ 98.2, subd. (f)(1).) Moreover, if the employer fails to appeal, upon the order becoming final, the Labor Commissioner may create and record a lien on the employer's real property. (§ 98.2, subd. (g).)

Finally, the statute requires the Labor Commissioner to "make every reasonable effort to ensure that judgments are satisfied, including . . . requiring the employer to deposit a bond as provided in Section 240." (§ 98.2, subd. (j).) Section 240, subdivision (a) provides:

> "if any judgment against an employer for nonpayment of wages remains unsatisfied for a period of 10 days after the time to appeal therefrom has expired, and no appeal therefrom is then pending, the Labor Commissioner may require the employer to deposit a bond in such sum as the Labor Commissioner may deem sufficient and adequate in the circumstances, to be approved by the Labor Commissioner. The bond shall be payable to the Labor Commissioner and shall be conditioned that the employer shall, for a definite future period, not exceeding two years,

26

pay the employees in accordance with the
provisions of this article, and shall be further
conditioned upon the payment by the employer
of any judgment which may be recovered
against the employer pursuant to the
provisions of this article."

Accordingly, where an employer does not appeal—and thus does
not post an appeal bond—the employee still has recourse through
the Labor Commissioner, who is authorized to take steps to
secure the employer's payment of awards for unpaid wages
owed to the employee.[11]

*Lewin* does not compel us to reach a different result.
There, the court "considered whether sureties had a unilateral
right" to cancel a statutory appeal bond[12] based on a handwritten
notation purporting to give them 15 days to cancel the bond after

---

[11] The timing of the entry of the clerk's judgments against
Ojogho here is perplexing. As he did not appeal, the Labor
Commissioner's awards against him became final around June 8,
2018—15 days after Ojogho was served with the awards by mail.
(§ 98.2, subd. (d).) And, as Ojogho did not pay the awards, the
Labor Commissioner should have presented them to the superior
court for entry of judgment 10 days after the awards were final.
(§ 98.2, subd. (e).) More than two years passed before it did so.
When asked about this delay at oral argument, plaintiffs' counsel
represented he had asked the Labor Commissioner to enter
judgment earlier. According to counsel, staffing issues at
the Labor Commissioner's office are causing lengthy delays
in the presentation of final awards for entry of judgment.

[12] The statute at issue provided, "Unless an undertaking is
given, the perfecting of an appeal shall not stay enforcement of"
a money judgment. (Code Civ. Proc., § 917.1, subd. (a)(1).)

27

its execution. (*Lewin, supra,* 56 Cal.App.4th at pp. 689, 697.) The court "look[ed] to the Bond and Undertaking Law to determine when a statutory bond becomes effective and, once in effect, how it may be withdrawn." (*Id.* at p. 699.) Plaintiffs first cite the court's quotation of the Bond and Undertaking Law's application on its terms "to any 'bond or undertaking executed, filed, posted, furnished, or otherwise given as security pursuant to any statute of this state,' " unless the statute provides otherwise. (*Id.*, at p. 698, quoting Code. Civ. Proc., § 995.020, subd. (a).) Plaintiffs then contend the court treated the giving of a bond and filing of it as "separate and distinct events," citing the court's statement that, under the Bond and Undertaking law, "Once a bond is given in an action or proceeding, it must be filed with the court." (*Lewin*, at p. 700, citing Code Civ. Proc., § 995.340, subd. (a).)

Plaintiffs miss the point. If a statutory appeal bond is not submitted to the court (or to someone else designated under the bond) to secure an appeal, it logically cannot have been given in the *action or proceeding*. Code of Civil Procedure section 995.340 specifically states that, "*If* a bond is given in an action or proceeding," then it "shall be filed with the court unless the statute providing for the bond requires that the bond be given to another person." (Code Civ. Proc., § 995.340, subd. (a), italics added.) Moreover, the facts in *Lewin* are inapposite. The defendant in fact had appealed from a judgment—which judgment was affirmed—and the appeal bond had been filed. Neither event occurred here.

Plaintiffs also ignore the fact the *Lewin* court specifically found the appeal bond at issue "was effective no later than January 25, 1994, by which time it had been *given and filed with*

28

*the trial court*." (*Lewin, supra*, 56 Cal.App.4th at p. 700, italics added.) The sureties had executed the bond on January 24, the bond was filed on January 25, and the sureties had filed the document purporting to withdraw the bond on January 28. (*Id.* at p. 697.) Had the sureties' execution of the bond been all that was necessary for the plaintiff to be able to enforce it, the court would have held the bond was effective as of January 24 —the date the sureties signed it. (*Id.* at pp. 700–701.) As the bond had been filed, the sureties could not unilaterally attempt to withdraw it without an order of the court. (*Ibid.*; See Code Civ. Proc., § 996.110 [a surety "on a bond given in an action or proceeding" must apply to the court for release from liability on the bond].)

      b.    *Judge Rice did not err in finding Great American's appeal bonds were not subject to forfeiture under section 98.2(b) based on A-1's attempted appeals*

As we discussed, Great American did not agree to be liable for plaintiffs' awards against A-1—only for those against Ojogho. Indeed, the bond securing Chonay's award no longer exists. Great American returned to Ojogho (through another one of his companies) the collateral it held for executing the bond and destroyed the bond. Who has the original bond securing Munoz's award, and whether Ojogho continues to pay the premiums on it, is unknown.

The trouble here, of course, is that A-1—acting through Ojogho or their joint counsel Aka—filed copies of the bonds with the court as exhibits to its notices of appeal. The bonds thus were before the court. Unfortunately, A-1 and Ojogho—erroneously or intentionally—represented those bonds provided security for A-1's obligations to plaintiffs under the appealed awards. As we

discussed, Great American did not agree to do so. Accordingly, Judge Rice, as a matter of law, neither could enforce the A-1 judgments against Great American—a nonparty—as A-1 was not the bond principal, nor forfeit the bonds to plaintiffs based on the dismissal of A-1's appeals under section 98.2(b).

*Sarumi* and *Patel*, mentioned above, do not help plaintiffs. In *Sarumi*, the appeal bond was ordered forfeited because the appealing employer was the bond principal and had filed, although late, the appeal bond. (*Sarumi, supra*, 36 Cal.App.5th Supp. at pp. 36–37, 38, 41 [noting "the appeal and bond were actually filed"].)

In *Patel*, instead of filing a valid notice of appeal, the employers essentially sought de novo review of the Labor Commissioner awards against them by filing suit against the employee. (*Patel, supra*, 85 Cal.App.5th at pp. 716–717 [complaint included writ of mandate cause of action demanding " 'a de novo hearing' "].) With their complaint, employers filed a notice of intent to post a bond under section 98.2, and their surety posted appeal bonds on their behalf, "indicat[ing] that they were 'give[n] [as] an undertaking for appeal in accordance [with the bond requirements of] . . . [s]ection 98.2.' " (*Patel*, at pp. 717–718.) The court held that, although the employers had not filed a proper notice of appeal under section 98.2 in challenging the Labor Commissioner awards, the appeal bonds they had posted under section 98.2 were subject to forfeiture. (*Patel*, at pp. 717–718.) The court noted the employers had "had the opportunity to challenge the [awards], and their efforts failed." (*Id.* at p. 722.) Accordingly, as the employers had not paid the judgments resulting from the awards, the section 98.2 appeal bonds they had posted—and which were "currently under the court's

30

control"—were forfeited to the employee under section 98.2(b). (*Patel*, at p. 722.)

Here, in contrast, the employer who sought to challenge the Labor Commissioner's awards was not the bond principal, and the employer to whom the surety issued the appeal bond never challenged the Labor Commissioner awards. Thus, we agree with Judge Rice that "[g]iven . . . A-1, the only judgment debtor who attempted an appeal, is not the principal on the Bonds, there is no ground for forfeiting those bonds to Plaintiffs." And, as Judge Rice said, plaintiffs "provid[ed] no authority holding that the Court may effectively re-write the Bonds to render [Great American] liable for a judgment against a party (A-1) with which it did not contract." In short, in the words of Judge Rice, "While there may be a policy in favor of expedient collection of wages due, this does not overcome the fact that A-1 is not the bond principal, and [Great American] did not agree to answer for its debts."

## 6. *Estoppel does not apply*

### a. *Great American cannot be estopped based on A-1's representations*

Plaintiffs first argue that, because A-1 would be estopped from claiming the appeal bonds were not issued to it—having caused plaintiffs to rely on its representations that the bonds were issued on its behalf—Great American is estopped from denying its liability on the bonds. We disagree. As Great American notes, in the case on which plaintiffs rely—*First v. Armes* (1983) 146 Cal.App.3d 633—the surety was estopped from arguing plaintiff was authorized only to recover an amount less than the amount explicitly stated on the face of an undertaking where the defendant, who was the bond principal, erroneously

31

had substituted the undertaking in the full sum stated in plaintiffs' writ of attachment in exchange for release of attached property that was worth less than that sum. (*Id.* at pp. 635–636.) The court found the defendant's errors led the plaintiffs reasonably to believe they were secured for the full writ of attachment amount under the undertaking. (*Id.* at p. 637.) Accordingly, as the defendant would be estopped to claim the amount stated in the undertaking was not the value of the property released upon his furnishing of the undertaking, the court held "[h]is surety . . . [was] likewise estopped." (*Id.* at p. 638.)

Critically, the surety in *First v. Armes* was estopped to the same extent as its *bond principal* from denying the undertaking secured the amount stated on its face. Here, as we established, A-1 is not Great American's bond principal. Thus, Great American cannot be bound by what A-1 represented about the bonds. Moreover, in *First v. Armes*, the surety was attempting to deny its liability for the amount specifically stated on the face of the bond it had issued. Here, it was A-1 that caused the confusion about the bonds by representing they secured the Labor Commissioner awards in favor of plaintiffs from which A-1 was appealing.

b.    *Judge Rice correctly found judicial estoppel*
       *does not apply*

Nor do we agree Great American is judicially estopped from denying it issued the bonds to A-1. Plaintiffs contend Great American took contradictory positions with respect to whom the bonds were issued in opposing the motions for judgment, on which it prevailed. Plaintiffs assert, according to Judge Sotelo's minute order denying Munoz's motion for

reconsideration, "Surety argue[d] that [Ojogho] filed the bond on behalf of A-1 but not himself."  They then argue Great American "reversed course" before Judge Rice and argued the bonds were "issued on Ojogho's behalf only."

Judicial estoppel is an equitable doctrine that "prohibits a party from asserting a position in a legal proceeding that is contrary to a position he or she successfully asserted in the same or some earlier proceeding."  (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 121.)  The elements are:  " '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' "  (*Ibid.*)

The appellate record does not support plaintiffs' contention that Great American took a contrary position before Judge Sotelo.  First, an argument that Ojogho "*filed* the bond on behalf of A-1 but not himself" is not inconsistent with Great American's position that it *issued* the bonds to Ojogho but not to A-1. (Italics added.)  As we said, A-1 only could act through Ojogho.  As there is no reporter's transcript of the hearing before Judge Sotelo, we do not know the exact context in which Great American made this argument.  (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8–9 [in absence of reporter's transcript appellate court " 'must . . . presume that what occurred at that hearing supports the judgment' "].)  Great American could have argued Ojogho (or defendants' counsel at Ojogho's direction) only could have filed the copies of the bonds with A-1's appeals

33

on A-1's behalf, rather than on Ojogho's own behalf, as Ojogho did not file any notices of appeal.

True, in his order denying Munoz's motion for reconsideration, Judge Sotelo mistakenly described the bond Munoz sought to enforce as stating, "Ojogho, as A-1's principal, desires to file an undertaking." But the issue before Judge Sotelo at that point was whether his order denying the motion for judgment jointly and severally against Ojogho and Great American was subject to reconsideration. Thus, as Judge Rice noted, the issue of "whether A-1 had posted bonds or whether any bonds had been posted as to A-1 which were subject to forfeiture due to the judgment against A-1," was not before Judge Sotelo.

Moreover, Great American's purported argument, and Judge Sotelo's description of the bonds, were not necessary to his decision denying Munoz's motion for judgment against Great American, as Ojogho's surety. Rather, as we discussed, Judge Sotelo agreed with Great American that Ojogho "needed to both file the appeal and file the bond for it to be effective." Finding Ojogho "neither filed an appeal nor posted/filed the bond," the court concluded the bond forfeiture provision under section 98.2 did not apply.

Finally, Judge Rice "carefully reviewed [Great American's] papers on the motion for reconsideration to determine whether [Great American] took" the position ascribed to it. The court found the argument "that Ojogho posted the bond on behalf of A-1 [was] Plaintiffs' argument, not [Great American's]. [Great American] was simply pointing out that Plaintiffs' claim about Ojogho posting the bond was not a 'new fact' justifying reconsideration of the order denying the motion for judgment." We too have reviewed Great American's opposition to the motion

34

for reconsideration and agree with Judge Rice. Great American stated Munoz's asserted new fact was that "Ojogho . . . personally posted the Labor Code appeal bond on behalf of non-party A-1." (Italics omitted.) Great American argued that fact was neither new, nor relevant. It continued, "Even if [Ojogho] 'personally posted' the bond with the reviewing court, Plaintiff's admission that he did so 'on behalf of A-1 Soccer,' and not himself (as an appellant), renders the appeal bond, which expressly named [Ojogho] (and not A-1 Soccer) as bond principal, not liable."

Accordingly, we conclude plaintiffs have failed to demonstrate the doctrine of judicial estoppel applies here.

### 7. *Plaintiffs are not entitled to fees as against Great American*

Plaintiffs contend Judge Rice erred in denying their request for attorney fees. They did not prevail in their motions to enforce their judgments against Great American. Plaintiffs thus are not entitled to an award of attorney fees as against Great American under any of the statutes they cite.

We express no opinion as to whether plaintiffs may recover from Ojogho and A-1—who are not parties to this appeal—the fees and costs plaintiffs have incurred in attempting to enforce the bonds, which defendants had represented were appropriate undertakings to secure payment of the awards against A-1 under section 98.2.

### CONCLUSION

This is a troubling case. Defendants Ojogho and A-1 have managed both to evade the undertaking requirements of section 98.2 and delay satisfaction of judgments owed plaintiffs for unpaid wages. Whether they did so intentionally or negligently is not before us. We cannot hold Great American

35

liable to plaintiffs, however, for defendants' representations that the appeal bonds Great American issued secured payment to plaintiffs on the awards entered against A-1 when they did not.

## DISPOSITION

We affirm the January 25, 2021 and August 19, 2021 orders. In the interests of justice, the parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P.J.

LAVIN, J.